IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES HUNT, | ) |
|              Plaintiff, | ) Case No. 23 cv 522 |
| v. | ) Hon. Edmond E. Chang |
| CITY OF CHICAGO, *et al.*, | ) Magistrate Judge Beth W. Jantz |
|              Defendants. | ) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants City of Chicago ("City"), former Police Superintendent David Brown ("Brown"), and Chief Administrator of the Civilian Office of Police Accountability ("COPA") Andrea Kersten ("Kersten") (collectively "Defendants"), through their attorneys, the Office of the Corporation Counsel of the City of Chicago, submit the following Reply Memorandum of Law in support of their Motion to Dismiss Plaintiff's Complaint (CM/ECF #11) ("Motion to Dismiss").

**INTRODUCTION**

Plaintiff's Response to Defendants' Motion to Dismiss (CM/ECF # 21) ("Response") fails to refute Defendants' arguments supporting dismissal of his Complaint (CM/ECF # 1), contains misstatements of law and fact, relies on conclusory assertions, and cites to cases that are easily distinguishable. For the reasons set forth in Defendants' Motion to Dismiss and further detailed below, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

**ARGUMENT**

**A.    Plaintiff has no property interest in a "fair and impartial" COPA investigation.**

As explained in the Defendants' Motion to Dismiss, Plaintiff has no protectible property interest in the Chicago Police Department's ("CPD") or COPA's investigative process, itself: "Process is not an end itself. Its constitutional purpose is to protect a substantive interest to which the individual

has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 258 (1983). Plaintiff's Response does not refute this basic principle or cite to any provision of the applicable Collective Bargaining Agreement ("CBA) entitling him to a protectible interest in the City's investigation procedures. Instead, Plaintiff offers only the conclusory assertion that he "was denied procedural due process when Defendants deprived his property interests by refusing his rights and demands for equal employment" under the applicable Collective Bargaining Agreement ("CBA"). *Id.* at p. 3. Having failed to address this threshold issue, Plaintiff has, under well-established case law, waived this argument. See *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court … [and this rule also applies] where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.") *Id.*

B.  **Plaintiff has no property interest in a particular CPD assignment or overtime opportunities.**

Next, Plaintiff argues that Defendants deprived him of a protectable property interest when he was reassigned, resulting in lost overtime opportunities. Response at pp. 2-5. As an initial matter, Plaintiff incorrectly asserts that Defendants did not "provide any case law to support their contention that overtime pay is not a protectable property interest. *Id.* at p. 2. To the contrary, Defendants cited *Kelly v. City of Chicago*, 22 cv 4535, 2023 WL 1779819 (N.D. Ill. Feb. 5, 2023), where the Court dismissed a complaint with virtually identical allegations and claims asserted against the City and certain City officials. See Motion to Dismiss at p. 5. In *Kelly*, Judge Kennelly held that "[Plaintiff] has no constitutionally-protected property interest in opportunities for overtime pay" because "[n]othing in the CBA –the source [Plaintiff] cites generally for this right– entitles her to such opportunities; indeed, it reserves to [CPD] the right to make work assignments." *Kelly*, 2023 WL 1779819, at *4. The CBA at issue in *Kelly* is the same CBA applicable to Plaintiff's claims here and it expressly reserves to CPD the right to assign work and overtime. Complaint, Ex. B, Article 4(D). Plaintiff does not (and cannot)

2

point to a single provision of the CBA that entitles him to any overtime opportunities. See *Kelly*, 2023 WL 1779819, at *4.

Similarly, Plaintiff does not have a protectable property interest in any particular work assignment. Without experiencing a loss in salary, Plaintiff lacks any property interest in a particular assignment or loss of police powers. See *Kelly*, 2023 WL 2023 WL 1779819, at *4, citing *Swick v. City of Chicago*, 11 F.3d 85, 87 (7th Cir. 1993) (finding involuntary leave and loss of police powers do not involve a protectable property interest); *Altman v. Hurst*, 734 F.2d 1240 (7th Cir. 1984) (finding that police officer has no protectible property interest in job assignments, overtime opportunities, and promised vacation dates); See also *Atterberry v. Sherman*, 453 F.3d 823, 826 (7th Cir. 2006) (finding reassignment pending investigation does not implicate a constitutionally protected property interest). Plaintiff's argument that he has a protected interest in overtime opportunities fails for the same reason as in *Kelly* and Plaintiff does not refute Defendants' argument that he does not have a protectable property interest in a particular assignment. As explained *supra*, Section A, p. 2., Plaintiff has, under well-established case law, waived any argument to the contrary.

**C.     Plaintiff failed to allege he availed himself of all state law remedies or that those remedies were inadequate.**

In his Response, Plaintiff asserts that his state law remedies are either inadequate or "non-existent." Response. at p. 5. Plaintiff's argument fails for multiple reasons. As an initial matter, Plaintiff failed to make these allegations in his Complaint. Plaintiff cannot raise this new allegation in his Response. See *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp.2d 964, 972 (N.D. Ill. 2008) (declining to consider new claims raised in response to a motion to dismiss) citing *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989).

Plaintiff argues that Article 4 of the CBA precludes him from availing himself of the grievance procedure entirely because "disciplinary actions against police officers are not subject to the grievance and arbitration procedures set forth in the [CBA]" Response at p. 5. Notwithstanding, Plaintiff pled

3

that there was an arbitration related to his reassignment. See Complaint at ¶19. Article 4 of the CBA states that the rights enumerated within it are not subject to the grievance procedure provided they are not "exercised contrary to or inconsistent with other terms of this Agreement." Complaint, Ex. B at Art. 4. Additionally, Article 9 of the CBA expressly defines a grievance as "a dispute or difference between the parties to this Agreement concerning interpretation and/or Application of this agreement or its provisions." *Id.* at Art. 9. Grievance procedures within a CBA "more than [meet] the [due process] demand[s] of the Constitution." *Xiong v. Fischer*, 787 F.3d 389, 400 (7th Cir. 2015). Accepting Plaintiff's argument that these remedies are inadequate or non-existent would necessarily mean no police officer could file a grievance related to discipline or the denial of overtime. This is patently untrue as a significant number of grievances are processed by the police union and various Illinois governmental entities in any given year. See e.g. *Derek B. Webb and Am. Fed. of State, Cty., and Mun. Employees, Council 31*, No. L-CB-19-038, 36 PERI ¶ 71, 2019 WL 7454637 (Nov. 18, 2019) (dismissing unfair labor practice charge against union that was resolving overtime issues "through contract negotiations and arbitrations," including having filed five grievances on behalf of the member regarding overtime distribution).

Plaintiff's suggestion that his use of the grievance procedure would have been futile because it would have resulted in "another opportunity for Defendants to deprive him of procedural due process," Response at p. 6, is also without merit. Plaintiff alleges no facts to support his conclusion that he was entitled to any hearing concerning the alleged actions by the City, nor does he allege any facts supporting his assertion that any investigations into his conduct were *per se* partial. Rather, as outlined *supra* in Section A, pp. 1-2, Plaintiff has no protectible property interest in "fair and impartial" investigations, themselves. The Seventh Circuit has long recognized that "[a public employer's] obligation under the Due Process clause is to provide sufficient remedies after [the deprivation of said rights], rather than to prevent [the deprivation] from happening." *Michalowicz v. Village of Bedford Park*,

4

528 F.3d 530, 535 (7th Cir. 2008). Here, the grievance procedure meets that requirement notwithstanding Plaintiff's allegations that he is being denied an opportunity to contest these "partial and unfair" investigations.

The Seventh Circuit has explicitly held that "we should not reject [a state-law remedy as inadequate] unless the remedy … can readily be characterized as inadequate to the point that it is meaningless or nonexistent and, thus, in no way can be said to provide the due process relief guaranteed by the fourteenth amendment." *Id.* at 535. Plaintiff's reliance on *Easter House v. Felder*, 910 F.2d 1387, 1406 (7th Cir. 1990), to argue that his state law remedies are inadequate is misplaced as the court in *Easter House* held that "when alternative relief exists . . . a plaintiff's due process rights are not violated and no basis for a Section 1983 action exists." Plaintiff always had available to him a plethora of state law remedies—declaratory judgment, mandamus, or injunctive relief—that more than satisfy procedural due process requirements under the Fourteenth Amendment. See *Ores v. Village of Dolton*, 152 F.Supp.3d 1069, 1087 (N.D. Ill. 2015) (declaratory judgment and injunction remedies available to redress alleged improper suspension of police sergeant).

Plaintiff's argument that he was denied a hearing and "there would be nothing available to review under the Illinois Administrative Review Act," Response at p. 6, is at odds with the allegation in his Complaint that there was an arbitration regarding his reassignment. See Complaint at ¶19, which would be subject to review in Illinois Circuit Court under 710 ILCS 5/1. Ultimately, Plaintiff had numerous state law remedies to pursue, failed to exhaust them, and failed to plead that he did so in his Complaint.

**D.      Plaintiff failed to state a substantive due process claim.**

Despite not specifying the nature of his due process claim in his Complaint, Plaintiff acknowledges in his response that he is not asserting a substantive due process claim. Response at p. 2, footnote 1.

5

**E.     Plaintiff failed to allege an equal protection claim.**

As established in Defendants' Motion to Dismiss, Plaintiff has not plead the requisite intent to state a "class-of-one" equal protection claim. To allege a "class-of-one" theory, Plaintiff must allege "he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Forgue v. City of Chicago*, 873 F.3d 962, 968 (7th Cir. 2017) quoting *Enquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601-02 (2008). "A 'class-of-one'-type equal protection claim cannot be asserted in the public employment context; the Supreme Court has made that clear." *Kelly v. City of Chicago*, 22 C 4535, 2023 WL 1779819, at *2 (N.D. Ill. Feb. 5, 2023)(citing *Engquist v. Oregon Dep't of Agriculture*, 442 U.S. 591, 607 (2008). Plaintiff fails to refute this principle in his Response. While Plaintiff makes passing mention of a violation of the Equal Protection Clause in his Response, p. 2, he does not make or develop any arguments in support of this mention. As explained *supra* in Section B. p. 2, Plaintiff has waived response to this argument.

**F.     Plaintiff failed to identify the individual Defendants' participation in a constitutional violation.**

In his Response, Plaintiff urges this Court to accept his bare recitation of the elements of a cause of action against the individual Defendants as sufficient to withstand the dismissal of his claims against them. Response at pp. 8-10. Plaintiff's claims are counter to established case law. Individual liability under Section 1983 "requires personal involvement in the alleged constitutional deprivation." *Minix v. Carecci*, 597 F.3d 824, 833 (7th Cir. 2010). Additionally, *Ashcroft v. Iqbal*, 556 U.S. 662, 678—79 (2009), makes clear that courts, in evaluating a motion to dismiss, should not accept as true legal conclusions that are nothing more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [which] do not suffice." Rather, a complaint must contain "sufficient factual matter, accepted as true, 'to state a claim that relief is plausible on its face.'" *Id.* Plaintiff's Complaint fails to allege any facts to support the conclusion that the individual Defendants were personally involved in any of the alleged actions at issue.

Plaintiff quotes *Carmody v. Bd. Of Trs. Of the Univ. of Ill.*, 893, F.3d 297, 401 (7thCir. 2018), in an attempt to show that, because Brown mentioned Plaintiff at a news conference, he should be liable for alleged violations committed against him. But *Carmody* states that a defendant must know of conduct that violates the constitutional rights of a defendant "*and* facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see." *Id.* At 407. Plaintiff's Complaint contains no allegation that Brown facilitated, approved, condoned, or turned a blind eye to a constitutional violation would satisfy the second element of the test in *Carmody*. This threadbare allegation that Brown knew of Plaintiff's transfer is insufficient to support the conclusion that Brown participated in a constitutional violation against Plaintiff.

Plaintiff's allegations against Kersten are likewise deficient. Plaintiff makes no allegations, beyond recitals of the elements of a Section 1983 action, of Kersten's personal involvement in a constitutional violation. Further, as a matter of City ordinance, Kersten is employed by COPA and works in an office entirely separate from CPD, MCC, §§2-78-105, making Plaintiff's conclusory allegations against Kersten as Plaintiff's "superior" nonsensical, even viewed in the light most favorable to Plaintiff.[1] Kersten, as Chief Administrator of COPA, may only "*recommend* to the Superintendent [of CPD] with respect to incidents within its jurisdiction, appropriate disciplinary or other remedial action against members of the Police Department." MCC, §2-78-120 (emphasis added). Plaintiff does not address the legal limitations placed on COPA (and by extension Kersten), nor does he plead how Kersten personally participated in any alleged action taken against Plaintiff.

Finally, Plaintiff's attempt to distinguish *Minix* and *Carmody* fails. Plaintiff asserts that, because these cases were decided at summary judgement, he should not be required to adequately allege the elements to support individual liability claims here. Response at pp. 8-10. Defendants' argument in

---

[1] City's ordinance may be judicially noticed on this Motion to Dismiss. *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977).

their Motion to Dismiss is that the elements in *Minix* and *Carmody*, (that the Individual Defendants knew of conduct in violation of Plaintiff's rights and facilitated it, approved it, condoned it, or turned a blind eye to it) must be pled to the well-established pleading standard of *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft*. Ultimately, Plaintiff's allegations against the Individual Defendants are nothing more than the very "threadbare recital[s]" that *Ashcroft* forbids. *See Ashcroft*, 556 U.S. at 678. These allegations should be disregarded and Count I against the Individual Defendants should be dismissed with prejudice.

**G.     Plaintiff failed to plead a basis for municipal liability.**

    **1.     Hunt failed to plead a policy, custom, or practice.**

Plaintiff confusingly asserts in his Response that Defendants "erroneously argue that Plaintiff has not sufficiently pled the elements for municipal liability, but they fail to point out that Plaintiff is *not* required to allege each of these elements in order to state a *Monell* claim. Response at p. 6 (emphasis in original). Plaintiff misinterprets Defendants' argument; Defendants' argument is that Plaintiff does not successfully allege *any* of the elements of *Monell*, let alone all of them. See Motion to Dismiss, pp. 10-11.

Plaintiff's argument that he "properly alleged two of the avenues [of *Monell* liability]" is meritless. To successfully plead *Monell*, Plaintiff must "'plead factual content that allows the court to draw the reasonable inference' that the City maintained a policy, custom, or practice" that violated Plaintiff's rights. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) citing *Ashcroft* 556 U.S. at 677; *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 694 (1978). "As always, conclusory allegations and formulaic recitations of the elements of a claim aren't enough" to state a claim. *Petropoulos v. City of Chicago*, 448 F. Supp.3d 835, 840 (N.D. Ill. 2020). The allegations in Plaintiff's Complaint and arguments in his Response amount to nothing more than formulaic recitations of the elements of *Monell*. See Compl.; Resp. at pp. 6-8.  Plaintiff's Complaint fails to allege a single fact in

support of his *Monell* claim beyond the conclusory sentence that "Defendant City of Chicago, at all times relevant hereto, the Individual Defendants . . . who were acting . . . pursuant to a custom, policy and practice of violating individuals' rights to freedom of speech under the First Amendment to the Constitution of the United States."[2] (sic). Response at pp. 7-8. Plaintiff's bald conclusions, however, do not support a reasonable inference of the individual defendants' personal involvement and are insufficient to plead a custom, policy, or practice. See *Petropoulos*, 448 F. Supp.3d at 840 ("[r]aw conclusions are not entitled to a presumption of truth"). Plaintiff argues that *Petropoulos* does not apply because "those [p]laintiffs were not employed by the defendant municipality," Response at p. 7, but the *Monell* standards in *Petropoulos* are not dependent on the identity of the Plaintiff. See *Id.* Plaintiff has failed to allege a custom, policy or practice.

   **2.   Plaintiff failed to plead that he was injured by anyone with final policymaking authority.**

Plaintiff's argument that he has successfully pled a *Monell* claim based on Defendants' final policymaking authority similarly fails. Plaintiff has offered nothing more than the conclusions that he has met the *Monell* pleading standard and a recitation that "the individual defendants exercised final policymaking authority for the City of Chicago." Response at p. 7. As explained *supra* in Section G(1), pp. 8-10, Plaintiff's bald recitation of the elements of *Monell* is insufficient to state a claim. Plaintiff must plead *facts*, not conclusions or recitations of the elements of *Monell*, to successfully allege a defendant has final policy making authority. See *Connelly v. Cook Cnty. Assessor's Office*, 583 F.Supp.3d 1142, 1149 (N.D. Ill. 2022) (emphasis added). Further, as explained *supra* in Section F, pp. 5-7, under the Municipal Code, Kersten lacks final policy making authority as it relates to discipline (or any actions at all) within CPD. MCC, §2-78-105.

---

[2] This is the only reference to freedom of speech or the first amendment in Plaintiff's Complaint.

**H.      Plaintiff lacks standing to enforce the CBA in Count II.**

Plaintiff's reliance on third-party beneficiary contract law principles to assert his standing to enforce the CBA is misguided. Plaintiff relies entirely on cases that do not involve third-party beneficiary law within the context of collective bargaining agreements. Response at p. 10. Thus, these cases are easily distinguishable from the current matter. *See Zurich v. Capital Markets, Inc. v. Coglianese*, 383 F. Supp.2d 1041 (N.D. Ill. 2015) (discussing whether and individual shareholder has right to sue on behalf of corporation of which he holds shares); *Olsen v. Etheridge*, 686 N.E.2d 563 (Ill. 1997) (discussing the applicability of third-party beneficiary law within the context of the sale of a business).

The Supreme Court of Illinois has held that "individual employees represented by a union should only be allowed to seek judicial review . . . if they can show their union breached its duty of fair representation." *Stahulak v. City of Chicago*, 703 N.E.2d 44, 48 (Ill. 1998). "It is the general purpose of collective bargaining to enable employees to pool their economic strength by joining together in a union to improve working conditions of employment as a collective group." *Id.* If an individual was free to challenge his union's resolution of a grievance "the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiations." *Id.* It is Plaintiff's union's decision when to raise claims of CBA violations because they are both parties to the CBA. Complaint, Ex. B., at Art. 2 ("The Employer recognizes the [FOP] as the sole and exclusive collective bargaining representative for all sworn Police Officers below the rank of sergeant.",); Section 9.2 ("In the event an informal resolution proves to be unsatisfactory, a grievance may be filed in a form to be agreed upon between the [FOP] and the Employer and shall be processed in accordance with this Agreement"). Allowing an individual union member to unilaterally assert violations in court would thwart the entire premise of collective bargaining and representation. See *Stahulak* 703 N.E.2d at 48.

Plaintiff's argument fails because he cannot come to court to secure a contractual employment benefit bargained for by the collective while also refusing to participate in the dispute resolution procedure designed by the same collective, to resolve these individual member contractual disagreements. Further, Plaintiff makes no claim that the FOP breached its duty of fair representation. Plaintiff lacks standing to enforce the CBA and his breach of contract claim should be dismissed with prejudice. .

I.  **Plaintiff failed to allege a breach of a contractual term.**

Plaintiff's Response newly points to contractual sections of the CBA pertaining to Employee Security and Non-Discrimination as terms allegedly breached by Defendants. As an initial matter, the provisions of Article 10.1 of the CBA were not identified in Plaintiff's Complaint; Plaintiff cannot amend his Complaint via his Response. *Gale v. Hyde Park Bank*, 02 cv 3663, 2002 WL 31356405, at *2 (N.D. Ill. Oct. 18, 2002) citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *Wooley*, 540 F. Supp.2d and 970. Plaintiff's argument that Defendants breached the CBA because they did not conduct an "impartial hearing" fails because he cites nothing in the CBA that states COPA investigations or sanctions against police officers would be fair and impartial or that he is entitled to "fair and impartial" COPA investigations. See *Sevugan v. Direct Energy Systems, LLC*, 931 F.3d 610,614 (7th Cir. 2019) ("[A] breach of contract claim requires an identifiable breach of a contract term"). See Response; Complaint, Ex. B. As a result, Plaintiff's breach of contract claim should be dismissed with prejudice.

J.  **The Court lacks subject matter jurisdiction to hear claims arising out of the CBA.**

Plaintiff argues that the language of the CBA is so clear that that the contract needs no interpretation and cannot be contested in good faith and thus, is not preempted by the Illinois Public Labor Relations Act, 5 ILCS §§ 315/1 *et seq.* ("IPLRA"). Plaintiff's argument is without merit. Plaintiff's Response refutes its own arguments by asserting that "the only relevant question under the

11

CBA will be whether Defendants had just cause to impose certain sanctions on Plaintiff." Response at p. 13. As an initial matter, the CBA does not require that the City show "just cause" in how it transfers, assigns, and schedules officers. Complaint, Ex. B at Art 4(E), nor does it require the City to show "just cause" in how it assigns work and overtime. *Id.* at Art. 4(D). The City cannot breach provisions that are not present in the contract. To the extent Plaintiff urges this Court to adopt an interpretation of the CBA requiring "just cause" for these employment reasons, such interpretation would require this Court to engage in the very type of interpretation preempted by IPLRA. See *Philips v. Baxter*, 16 cv 8233, 2020 WL 2197842, at *6 (N.D. Ill. May 6, 2020) (citations omitted). Further, Plaintiff does not cite to any authority supporting the argument that a court may interpret "just cause" without interpreting the CBA, itself.

As stated in Defendants' Motion to Dismiss, under Illinois law, a violation of an employee's collective bargaining agreement is governed by IPLRA. "Federal and Illinois state courts have been clear that the Board has exclusive jurisdiction to hear unfair labor practice grievances . . . ." *Flowers v. City of Chicago*, 18 cv 7003, 2019 WL 1932587, at *8 (N.D. Ill. May 1, 2019). Where a plaintiff's allegations require interpretation of a collective bargaining agreement, such interpretation is within the exclusive jurisdiction of the Illinois Labor Relations Board ("ILRB") and federal claims must be dismissed. *Philips*, 2020 WL 2197842, at *6. Further, when the "just cause" standard is not defined by a collective bargaining agreement, it requires interpretation; the definition is routinely argued in arbitration. See *American Federation of State, County and Municipal Employees, AFL-CIO v. State of Illinois*, 124 Ill.2d 246, 256 (1988) (holding that where just cause is not defined in a collective bargaining agreement it is left up to [an] arbitrator to determine if the grievants were discharged for 'just cause'); See also, *Roxie LeMond v. Chicago Police Department Education and Training Academy*, No. L-CA-04-016, 20 PERI ¶ 95, 2004 WL 6012664 (May 14, 2004) (Director found that charging party was not protected by bargaining agreement provisions requiring "just cause" for discharge because she was a

probationary employee); *Ill. Frat. Order of Police Labor Council v. County of Rock Island*, No. S-CA-96-043, 14 PERI ¶ 2029, 1998 WL 35394389 (Apr. 29, 1998) (deputy sheriff "grieved both of the reprimands, claiming that they were not for just cause under the parties' collective bargaining agreement"). Plaintiff's claims require interpretation of the CBA. Thus, Count II of his Complaint is preempted by IPLRA and should be dismissed.[3]

Plaintiff points to *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 408-10 (1988) to demonstrate that a claim is not preempted when a CBA is does not require interpretation. *Lingle*, however, is easily distinguishable as it pertains to purely factual inquiries, rather than interpretations of contractual terms such a "just cause." Confusingly, Plaintiff seemingly claims the LMRA grants this Court jurisdiction over his breach of contract claim.[4] Response at p. 12. If taken as true, this argument flies in the face of his assertion that the language of the CBA is so clear as to not require interpretation (and pre-emption). Further, Plaintiff's Complaint states [p]ursuant to 28 [U.S.C.] § 1367(a), this Court has supplemental jurisdiction . . . .", *Id.* at p. 2, which is entirely unnecessary if Plaintiff's claim fell under the LMRA, a federal statute.

### K.      Plaintiff fails to allege a contract with the individual Defendants.

Plaintiff acknowledges in his Response that he has not pled a viable theory to support holding the individual Defendants liable for breach of contract and has voluntarily dismissed that claim against them.

---

[3] To the extent Plaintiff responds to arguments that the federal Labor Management Relations Act ("LMRA") preempts his claims, Defendants made no argument in favor of federal preemption. See Response at pp. 12-13; Motion to Dismiss pp. 13-14. Rather, Defendants referred to interpretations of the LMRA for guidance in evaluating the IPLRA due to similarities in Illinois and federal labor laws. See Motion to Dismiss at p. 13 footnote 3; See also *Chief Judge of the Sixteenth Judicial Circuit v. Illinois Labor Relations Bd.*, 687 N.E.2d 795 (Ill. 1997).

[4] Plaintiff's Response includes a quote from Section 301 of the LMRA related to "actions and proceedings by or against labor organizations in the district courts of the United States" and "suits for violation of contracts between a labor organization representing employees in an industry effecting commence. . . ." See Response, p. 12. The instant claim is not brough against a labor organization and the cited language of Section 301 does not support Plaintiff's misguided argument that he may bring a suit against his employer in federal district court an alleged CBA violation.

**CONCLUSION**

For the foregoing reasons, and those stated in their Motion to Dismiss, Defendants City of Chicago, David Brown, and Andrea Kersten respectfully request the Court enter an order dismissing Plaintiff's Complaint with prejudice and grant all other and further relief that the Court deems necessary.

Dated: June 12, 2023

Respectfully submitted,

CORPORATION COUNSEL FOR THE
CITY OF CHICAGO,

City of Chicago, Department of Law
Employment Litigation Division
2 North La Salle Street, Suite 640
Chicago, Illinois 60602
312.742.1935 / 744.0898
Matthew.suhl@cityofchicago.org
Derek.kuhn@cityofchicago.org

By: *s/Matthew E. Suhl*
MATTHEW E. SUHL
Assistant Corporation Counsel

DEREK KUHN
Assistant Corporation Counsel Supervisor